23715

Helen McGILL, Respondent/Appellant v. The UNIVERSITY OF SOUTH CAROLINA, Appellant/Respondent.

(423 S.E. (2d) 109)

Supreme Court

*William L. Pope* and *Kelly E. Shackelford, Pope & Rodgers,* Columbia, *for appellant, respondent.*

*J. Lewis Cromer, Cromer & Mabry,* Columbia, *for respondent, appellant.*

Heard June 1, 1992.

Decided Sept. 21, 1992.

CHANDLER, Justice:

These cross-appeals involve the recently enacted South Carolina Whistleblower's Act,[1] pursuant to which a jury awarded Respondent/Appellant, Helen McGill (McGill), a $350,000 verdict against Appellant/Respondent, University of South Carolina (USC).

Trial court denied USC's motion for judgment notwithstanding the verdict (JNOV) but, applying the statutory cap of the South Carolina Tort Claims Act,[2] reduced the verdict to $250,000.

We affirm in part, reverse in part.

## FACTS

McGill was hired on April 3, 1989, as USC's Hazardous Waste manager, responsible for storage and disposal of chemical wastes. In July and August, 1989, she reported to various government agencies, including Department of Health and Environmental Control (DHEC) and the USC Legal Department, what she believed to be violations of DHEC regulations.

On October 2, 1989, one day prior to her achieving the status of full-time employee, McGill was terminated by USC's

---

[1] S.C. Code Ann. § 8-27-10 *et. seq.* (Cum. Supp. 1991).

[2] S.C. Code Ann. § 15-78-120(a)(1) (Cum. Supp. 1991).

Associate Provost for "gross negligence and insubordination."

Her subsequent Whistleblower suit resulted in a $350,000 jury verdict which was reduced by the trial court to $250,000. McGill was also awarded $86,000 costs and attorney's fees. Both parties appeal.

## ISSUES

Although numerous issues are raised, we address only

(1) whether USC was entitled to a directed verdict and judgment notwithstanding the verdict (JNOV);

(2) whether the $250,000 statutory cap of the Tort Claims Act applies to Whistleblower actions.

## DISCUSSION

### I. DIRECTED VERDICT/JNOV

USC contends that its motions for directed verdict and JNOV should have been granted on two grounds: (1) that the evidence conclusively establishes that the sole reason for her discharge was McGill's own negligence and insubordination, and not her whistleblowing, and (2) that McGill failed to prove any *actual* violation of the Whistleblower Act. We disagree.

It is elementary that, in ruling on motions for directed verdict and JNOV, the trial court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *See Holtzscheiter v. Thomson Newspapers, Inc.*, — S.C. —, 411 S.E. (2d) 664 (1991); *Santee Portland Cement v. Daniel International Corp.*, 299 S.C. 269, 384 S.E. (2d) 693 (1989).

The Whistleblower Act, § 8-27-10, *et seq.*, inhibits a public body from discharging, disciplining, punishing, or otherwise threatening an employee "whenever the employee reports a violation of any state or federal law or regulation," or "whenever the employee exposes governmental criminality, . . . waste, fraud, gross negligence or mismanagement." S.C. Code Ann. § 8-27-20 (Cum. Supp. 1991).

Section 8-27-30(A) of the Act creates a presumption of wrongful treatment when an employee is terminated, disciplined or otherwise punished within one year of having re-

ported a violation of any state or federal law or regulation. The presumption is rebuttable with the burden on the defendant to demonstrate that the discharge or discipline was unrelated to plaintiff's whistleblowing. S.C. Code § 8-27-30(B). The statute affords certain affirmative defenses which USC concedes are inapplicable here; section 8-27-40 allows the public body to discharge an employee for causes independent of whistleblowing.

Adverting to the record, it is patently clear that disputed testimony and other evidence was presented from which factual determinations were reached. These determinations were solely for the jury who heard, weighed and evaluated the evidence, including the witnesses and the credibility of their testimony. "We are not at liberty to pass upon the veracity of witnesses and determine the case according to what we think is the weight of the evidence." *Graham v. Whitaker*, 282 S.C. 393, 398, 321 S.E. (2d) 40, 43 (1984). Trial court properly denied USC's motions for directed verdict and JNOV; to have done otherwise would have invaded the exclusive province of the jury.

■ We next address USC's contention that the Whistleblower Statute requires a plaintiff prove the existence of an *actual* violation. This contention is without merit.

The statute requires only that the employee not report or testify to an alleged violation "without probable cause." The discharge of an employee who, in good faith, reports a suspected violation constitutes retaliation for which the statute provides a remedy.

We accord with courts of other jurisdictions which hold that good-faith whistleblowing and good-faith refusal to follow malevolent instructions are protected from retaliation. *See, e.g., Pilcher v. Commissioners of Wyandotte County*, 14 Kan. App. (2d) 206, 787 P. (2d) 1204 (1990); *Tyrna v. Adamo, Inc.*, 159 Mich. App. 592, 407 N.W. (2d) 47 (1987); *Lanes v. O'Brien*, 746 P. (2d) 1366 (Colo. App. 1987); *Phipps v. Clark Oil & Refining Corp.*, 408 N.W. (2d) 569 (Minn. 1987).

## II. STATUTORY CAP

■ Trial court, applying the $250,000 statutory cap of the Tort Claims Act, reduced the jury's $350,000 verdict. This was error.

Section15-78-120(a) of the Tort Claims Act limits liability of any governmental agency to $250,000 "for any action or claim for damages *brought under the provisions of this chapter.*" On its face, the $250,000 Tort Claims limitation is irrelevant to an action instituted pursuant to the Whistleblower Statute.

"[I]n construing a statute its words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation" *Bryant v. City of Charleston,* 295 S.C. 408, 411, 368 S.E. (2d) 899, 900-901 (1988). There is no language in the Tort Claims Act to indicate or infer that its statutory cap governs Whistleblower actions. The Whistleblower Statute was enacted as a protection to public employees who report or testify to public wrongdoing. Had the legislature intended to limit the amount of damages to be recovered, it could have done so.

## CONCLUSION

We affirm so much of the judgment as denies defendant's motions for directed verdict and JNOV; we reverse the reduction of the verdict and reinstate the $350,000 award, and the allowance of costs and attorney's fees.[3]

Affirmed in part; reversed in part.

HARWELL, C.J., TOAL and MOORE, JJ., and JOHN P. GARDNER, Acting Associate Justice, concur.

---

[3] USC's remaining issues are affirmed pursuant to Rule 220(b)(1) S.C.A.C.R., and the following authorities: Issue III, *Brave v. Blakely,* 250 S.C. 353, 157 S.E. (2d) 726 (1967); Issue IV, *Hofer v. St. Clair,* 298 S.C. 503, 381 S.E. (2d) 736 (1986); Issue V, *Small v. Springs Industries, Inc.,* 300 S.C. 481, 388 S.E. (2d) 808 (1990); *Easler v. Hejaz Temple,* 285 S.C. 348, 329 S.E. (2d) 753 (1985).