594 S.E.2d 888

**Ray B. BURTON, III and East Coast Newspapers, Inc., Respondents/Appellants,**

v.

**YORK COUNTY SHERIFF'S DEPARTMENT and Bruce Bryant, York County Sheriff, Appellants/Respondents.**

**No. 3771.**

Court of Appeals of South Carolina.

Heard March 10, 2004.

Decided April 5, 2004.

Melvin B. McKeown, Jr. and Elizabeth H. Robinson, both of York, for Appellants/Respondents.

Jay Bender, of Columbia, for Respondents/Appellants.

Robert E. Lyon, Jr. and M. Clifton Scott, both of Columbia, for Amicus Curiae South Carolina Association of Counties.

Sandra J. Senn and Stephanie P. McDonald, both of Charleston, for Amici Curiae South Carolina Sheriffs' Association and South Carolina Fraternal Order of Police.

ANDERSON, J.:

In this case, we decide whether the Freedom of Information Act, S.C.Code Ann. §§ 30–4–10 to –165 (1991 & Supp.2003) ("FOIA"), requires the Sheriff of York County ("the Sheriff") and the York County Sheriff's Department (collectively, "the Sheriff's Department") to provide information regarding alleged illegal and unethical conduct of four deputy sheriffs to Ray B. Burton, III and East Coast Newspapers, Inc. (collectively, "Burton").

## *FACTUAL/PROCEDURAL BACKGROUND*

Sometime in early 2000, four York County deputy sheriffs were suspended without pay for "conduct unbecoming an officer." The suspension followed an internal investigation of a complaint lodged against the deputies by Lori Williams, a citizen of York County. After filing her complaint, Williams contacted Burton, a reporter for *The Herald* newspaper, which is published in Rock Hill. Williams informed Burton that her complaint to the Sheriff's Department included falsification of investigative reports, possession of stolen property, abuse of authority, and sexual activity in patrol cars.

In an effort to obtain more information for a newspaper report, Burton submitted written requests to the Sheriff's Department for access to records it possessed relating to Williams' complaint and the Sheriff's Department's response to the complaint. Burton identified two specific categories of information he wanted:

(1) Crime Reports. Burton requested access to reports of all complaints or allegations of illegal conduct made against the named deputy sheriffs since January 1, 2000, including all complaints made by Williams during that time.

(2) Employment Records. Burton asked to review the employment information for the named deputy sheriffs, including "dates of employment, title, rank, pay-rate schedule, copies of disciplinary letters, records of suspension and all other information as provided by law."

The Sheriff's Department's response only provided information as to the date of hire, title/rank, and pay/rate schedule for each of the named deputies. It claimed all other information

requested was exempt from disclosure under FOIA because the information was of a personal nature and disclosing it would constitute an unreasonable invasion of personal privacy. The personal privacy exemption is provided under S.C.Code Ann. § 30–4–40(a)(2) (1991). Alternatively, the Sheriff's Department claimed the information requested was exempt under S.C.Code Ann. § 30–4–40(a)(3) (Supp.2003) (records of law enforcement activities compiled in the process of detecting and investigating a crime the disclosure of which would harm an ongoing or prospective law enforcement action) and § 30–4–40(a)(7) (1991) ("[c]orrespondence or work products of legal counsel for a public body and any other material that would violate attorney-client relationships"). Burton initiated this action seeking declaratory and injunctive relief.

After conducting an *in camera* review of the Sheriff's Department's records that the Department claimed were exempt from disclosure, the trial court concluded the Department had violated the FOIA. The judge "permanently enjoined and restrained" the Sheriff's Department "from asserting exemptions from mandatory disclosure that have no legal or factual justification, and from continuing to refuse to segregate exempt and non-exempt material and make non-exempt public records available for inspection and copying."

The trial court found that a portion of the records submitted for *in camera* review revealed information that would lead to an unreasonable invasion of personal privacy if disclosed. In its findings of fact, the court concluded "the Williams' allegations relating to the off-duty sexual practices and activities of the deputies is personal and private, as are the photographs in the record of Williams and Deputy Sullivan." Burton has not appealed or otherwise contested this finding.

## STANDARD OF REVIEW

Burton sought injunctive relief and a declaratory judgment pursuant to FOIA.

Declaratory judgments in and of themselves are neither legal nor equitable. *See Felts v. Richland County,* 303 S.C. 354, 400 S.E.2d 781 (1991); *Campbell v. Marion County Hosp. Dist.,* 354 S.C. 274, 580 S.E.2d 163 (Ct.App.2003);

*Wiedemann v. Town of Hilton Head Island,* 344 S.C. 233, 542 S.E.2d 752 (Ct.App.2001). The standard of review for a declaratory judgment action is therefore determined by the nature of the underlying issue. *Campbell,* 354 S.C. at 279, 580 S.E.2d at 165; *see also Goldston v. State Farm Mut. Auto. Ins. Co.,* 358 S.C. 157, 594 S.E.2d 511 (S.C. Ct.App. 2004) (Shearouse Adv. Sh. No. 8 at 52) (stating that because declaratory judgment actions are neither legal nor equitable, standard of review depends on nature of underlying issues); *Travelers Indem. Co. v. Auto World,* 334 S.C. 137, 511 S.E.2d 692 (Ct.App.1999) (noting that suit for declaratory judgment is neither legal nor equitable, but is determined by nature of underlying issue).

 A declaratory judgment action under the FOIA to determine whether certain information should be disclosed is an action at law. *See South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.,* 316 S.C. 163, 447 S.E.2d 843 (1994); *Campbell,* 354 S.C. at 280, 580 S.E.2d at 165. In an action at law tried without a jury, the appellate court's standard of review extends only to the correction of errors of law. *Crary v. Djebelli,* 329 S.C. 385, 496 S.E.2d 21 (1998); *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976); *Okatie River v. Southeastern Site Prep,* 353 S.C. 327, 577 S.E.2d 468 (Ct.App.2003). Thus, the trial court's factual findings will not be disturbed on appeal unless a review of the record discloses that there is no evidence which reasonably supports the judge's findings. *Townes,* 266 S.C. at 86, 221 S.E.2d at 775; *Barnacle Broad., Inc. v. Baker Broad., Inc.,* 343 S.C. 140, 538 S.E.2d 672 (Ct.App.2000); *see also Sloan v. Greenville County,* 356 S.C. 531, 590 S.E.2d 338 (Ct.App.2003) (declaring that in actions at law, on appeal of case tried without jury, lower court must be affirmed where there is any evidence which reasonably supports judge's findings).

## *LAW/ANALYSIS*
## I. FOIA CLAIMS

The South Carolina Freedom of Information Act is codified as sections 30–4–10 to –165 in the South Carolina Code. *See* S.C.Code Ann. §§ 30–4–10 to –165 (1991 & Supp.2003). Upon request, FOIA mandates disclosure of records held by a

"public body" unless the documents fall within enumerated exemptions. *See* S.C.Code Ann. §§ 30–4–30 to –40 (Supp. 2003). As our Legislature explicitly provided in enacting FOIA, disclosure, not secrecy, is the dominant objective of the Act:

> The General Assembly finds that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy. Toward this end, provisions of this chapter must be construed so as to make it possible for citizens, or their representatives, to learn and report fully the activities of their public officials at a minimum cost or delay to the persons seeking access to public documents or meetings.

S.C.Code Ann. § 30–4–15 (1991).

The essential purpose of the FOIA is to protect the public from secret government activity. *Campbell v. Marion County Hosp. Dist.*, 354 S.C. 274, 580 S.E.2d 163 (Ct.App.2003); *see also Quality Towing, Inc. v. City of Myrtle Beach*, 345 S.C. 156, 163, 547 S.E.2d 862, 865 (2001) ("FOIA was enacted to prevent the government from acting in secret."); *Wiedemann v. Town of Hilton Head Island*, 330 S.C. 532, 535 n. 4, 500 S.E.2d 783, 785 n. 4 (1998) (noting that "[t]he purpose of the FOIA is to protect the public from secret government activity"). The FOIA meets the demand for open government while preserving workable confidentiality in governmental decisionmaking. *Bellamy v. Brown*, 305 S.C. 291, 408 S.E.2d 219 (1991); *Campbell*, 354 S.C. at 281, 580 S.E.2d at 166.

"South Carolina's FOIA was designed to guarantee the public reasonable access to certain activities of the government." *Fowler v. Beasley*, 322 S.C. 463, 468, 472 S.E.2d 630, 633 (1996). The FOIA creates an affirmative duty on the part of public bodies to disclose information. *Bellamy*, 305 S.C. at 295, 408 S.E.2d at 221; *Campbell*, 354 S.C. at 281, 580 S.E.2d at 166. The purpose of the FOIA is to protect the public by providing for the disclosure of information. *Id.* The FOIA is remedial in nature and should be liberally construed to carry out the purpose mandated by the legislature. *Campbell*, 354 S.C. at 281, 580 S.E.2d at 166.

■ The exemptions from disclosure under FOIA do not create a duty of nondisclosure. *Bellamy,* 305 S.C. at 295, 408 S.E.2d at 221. At most, these exemptions simply allow public agencies the discretion to withhold exempted materials from public disclosure. *Id.* Indeed, consistent with FOIA's goal of broad disclosure, the exemptions from its mandates are to be narrowly construed. *See Campbell,* 354 S.C. at 281, 580 S.E.2d at 166; *see also Quality Towing,* 345 S.C. at 161, 547 S.E.2d at 864–65 (stating that FOIA is remedial in nature and should be liberally construed to carry out purpose mandated by legislature). Moreover, the determination of whether documents or portions thereof are exempt from the FOIA must be made on a case-by-case basis. *City of Columbia v. ACLU,* 323 S.C. 384, 475 S.E.2d 747 (1996); *Newberry Publ'g Co. v. Newberry County Comm'n on Alcohol & Drug Abuse,* 308 S.C. 352, 417 S.E.2d 870 (1992).

In this appeal, the Sheriff's Department argues the trial court erred in its application of FOIA. First, the Sheriff's Department claims the Department is not a "public body" as defined by FOIA and is therefore not subject to its strictures. Alternatively, the Sheriff's Department maintains the information Burton sought is exempt from disclosure under FOIA because its release would constitute an unreasonable invasion of privacy. We address these arguments seriatim.

## A. "Public Body" under FOIA

### 1. Sheriff as "public body"

■ The key operative provision of FOIA provides: "Any person has a right to inspect or copy any public record of a *public body,* except as otherwise provided by § 30–4–40, in accordance with reasonable rules concerning time and place of access." S.C.Code Ann. § 30–4–30(a) (1991) (emphasis added). FOIA defines "public body" for the purposes of the Act:

"Public body" means any department of the State, . . . any state board, commission, agency, and authority, any public or governmental body or political subdivision of the State, including counties, municipalities, townships, school districts, and special purpose districts, or any organization, corporation, or agency supported in whole or in part by public funds or expending public funds, including commit-

tees, subcommittees, advisory committees, and the like of any such body by whatever name known, and includes any quasi-governmental body of the State and its political subdivisions. . . .

S.C.Code Ann. § 30–4–20(a) (Supp.2003). This Court does not need to look any further than the language of the statute to find the Sheriff's Department is subject to FOIA. *See Tilley v. Pacesetter Corp.*, 355 S.C. 361, 373, 585 S.E.2d 292, 298 (2003) ("When the language of a statute is plain, unambiguous, and conveys a clear and definite meaning, the application of standard rules of statutory interpretation is unwarranted. . . . The statutory terms, therefore, must be applied according to their literal meaning.") (citations omitted).

We first note that the office of the sheriff was created by our state constitution, which grants the General Assembly authority to determine their duties, qualifications, training, and compensation. *See* S.C. Const. art. V, § 24; *see also* S.C.Code Ann. § 23–11–110 (Supp.2003) (prescribing the qualifications of sheriffs); *Botchie v. O'Dowd*, 299 S.C. 329, 332 n. 3, 384 S.E.2d 727, 729 n. 3 (1989) (noting that the South Carolina Constitution "authorizes the election of a sheriff as a county officer"). The Sheriff's Department, therefore, clearly falls within the compass of the plain meaning of "public or governmental body or political subdivision of the State" under section 30–4–20(a).

### 2. **Efficacy of *Weston v. Carolina Research***

Furthermore, the Sheriff's Department is supported exclusively by public funds. Sheriff Bruce Bryant testified that the Department's annual budget was "approximately thirteen million dollars," all of which was received through York County tax revenue and federal grants.

Our Supreme Court has ruled the fact that an organization, corporation, or agency is supported in whole or in part by public funds or expends public funds is sufficient grounds alone to find the organization is a "public body" under FOIA, regardless of any other factors. *See Weston v. Carolina Research & Dev. Found.*, 303 S.C. 398, 401 S.E.2d 161 (1991). The *Weston* Court explained its reading of the statute:

The [Defendant's] argument that the FOIA only applies to governmental and quasi-governmental bodies would rewrite the statutory definition of "public body" by deleting the phrase, "or any organization, corporation, or agency supported in whole or in part by public funds or expending public funds." According to the [Defendant's] position, a corporation that cannot be labeled governmental or quasi-governmental would be exempt from the FOIA, regardless of whether it received support from public funds or expended public funds. Such a construction would obliterate both the intent and the clear meaning of the statutory definition.

*Id* at 403, 401 S.E.2d at 164.

Therefore, based solely on the fact that the Sheriff's Department is supported exclusively by public funds, we are compelled to find the Department is a "public body" subject to the mandates of FOIA.

### B. *In Camera* Review

Under the FOIA, an *in camera* review of documentary material is mandated where there exists any controversy in regard to the production of contested documents.

In *Newberry Publ'g Co. v. Newberry County Comm'n on Alcohol & Drug Abuse*, 308 S.C. 352, 417 S.E.2d 870 (1992), the Supreme Court inculcated:

Section 30–4–40(b) provides that:

> If any public record contains material which is not exempt under subsection (a) of this section, the public body shall separate the exempt and nonexempt material and make the nonexempt material available in accordance with the requirements of this chapter.

The Observer contends that the trial judge erred in failing to segregate the nonexempt and exempt portions of the report and to provide the Observer with the nonexempt material, as is mandated by section 30–4–40(b). We agree.

... We find that SLED's policy of denying all FOIA requests for criminal investigative reports, without determining whether portions of the report are subject to disclosure, is in direct contravention of the clear language of the FOIA.

... [T]he report may not be entirely exempt from disclosure; the statute goes on to state that a public record containing both nonexempt and exempt material must be segregated so that the nonexempt material is made available to the public. As a result, we reject SLED's contention that this, or any, criminal investigative report is *per se* exempt from disclosure.

. . . .

In sum, we emphasize that law enforcement agencies do not have carte blanche to deny all FOIA requests for criminal investigative reports. The information contained in these reports can be withheld from disclosure only to the extent that it falls within one or more of the exemptions enumerated in section 30–4–40(a). The determination as to which portions of a report are exempt and which portions must be disclosed should be done on a case-by-case basis.

*Id.* at 354–56, 417 S.E.2d at 873. Thereafter, the Court, in *City of Columbia v. ACLU,* 323 S.C. 384, 475 S.E.2d 747 (1996), explicated: "Before Appellant becomes entitled to the report, the trial court must first examine the report in detail in order to determine whether the report's contents or portions thereof qualify for an exemption under § 30–4–40." *Id.* at 388–89, 475 S.E.2d at 750.

In the case *sub judice,* the trial court conducted an *in camera* review resulting in a fact-specific analysis of producible documents as juxtaposed to protected documents. The actual materials and documents reviewed in an *in camera* hearing constitute evidence in the case. The sealed documents reviewed by the trial court have been examined by this Court and support the order issued by the trial court.

## C. Privacy Exemption

 Though the purpose of FOIA is to create an affirmative duty on the part of public bodies to disclose information, the Act enumerates fifteen categories of public records that may be exempt from mandatory disclosure. *See* S.C.Code Ann. § 30–4–40 (1991 & Supp.2003). The category relevant to the present case is known as the "privacy exemption." Section 30–4–40(a)(2) exempts from disclosure "[i]nformation of a personal nature where the public disclosure thereof would constitute unreasonable invasion of personal privacy." We

find the specific information Burton seeks does not fall within the purview of this exemption.

Section 30–4–40(a)(2) does not specifically list or define the types of records, reports, or other information that should be classified as personal or private information exempt from disclosure. We must, therefore, resort to general privacy principles, which examination involves a balancing of conflicting interests—the interest of the individual in privacy on the one hand against the interest of the public's need to know on the other.

Our Supreme Court has defined the "right to privacy" as the right of an individual to be let alone and to live a life free from unwarranted publicity. *Sloan v. South Carolina Dep't of Pub. Safety*, 355 S.C. 321, 586 S.E.2d 108 (2003). However, " 'one of the primary limitations placed on the right of privacy is that it does not prohibit the publication of matter which is of legitimate public or general interest.' " *Society of Prof'l Journalists v. Sexton*, 283 S.C. 563, 566, 324 S.E.2d 313, 315 (1984) (quoting *Meetze v. Associated Press*, 230 S.C. 330, 95 S.E.2d 606 (1956)). Indeed, the Court has held that, as a matter of law, "if a person, whether willingly or not, becomes an actor in an event of public or general interest, 'then the publication of his connection with such an occurrence is not an invasion of his right to privacy.' " *Doe v. Berkeley Publishers*, 329 S.C. 412, 414, 496 S.E.2d 636, 637 (1998) (quoting *Meetze*, 230 S.C. at 337, 95 S.E.2d at 609).

In the present case, we find the manner in which the employees of the Sheriff's Department prosecute their duties to be a large and vital public interest that outweighs their desire to remain out of the public eye. The newspaper, in fulfilling its obligation to report on and hold to account those in public service, had a legitimate need to access the records Burton requested. Burton and the newspaper did not seek information regarding the off-duty sexual activities of the deputies involved. Rather, the access to information they sought and the trial court granted was focused on the performance of public duties by the Sheriff and his deputies and the response of the Department to allegations of misconduct by the deputies.

We affirm the trial court's finding that the information requested by Burton was not exempt under section 30–4–40(a)(2) of the Act.

D. Right to Privacy under the United States Constitution

■ The Sheriff's Department contends that disclosing the information Burton requested would violate the deputies' "right to privacy" guaranteed by the Fourteenth Amendment to the United States Constitution. The Department essentially raises this argument twice: (1) as grounds for exemption under FOIA from disclosure of "[m]atters specifically exempted from disclosure by statute or law," S.C.Code Ann. § 30–4–40(a)(4) (1991 & Supp.2003); and (2) as a defense entirely separate from the FOIA regime. Either way, we find the argument is without merit.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend XIV, § 1. From this broad language, the United States Supreme Court has extrapolated a number of principles used to evaluate whether laws enacted by the state and federal governments are reasonable, fair, and supported by adequate justification. These Fourteenth Amendment principles are generally grouped together under the label of "substantive due process." Among these substantive due process guarantees exists what the Supreme Court has termed a "right of privacy."

■ Unlike the privacy rights implicated under section 30–4–40(a)(2) of FOIA or under the common law tort of invasion of privacy, the right of privacy subsumed under the Fourteenth Amendment has been narrowly defined and limited to specific situations:

[I]n terms of due process and equal protection the "right to privacy" has come to mean a right to engage in certain highly personal activities. More specifically, it currently relates to certain rights of freedom of choice in marital, sexual, and reproductive matters. Even this definition may be too broad, for the Court still has not recognized any general right to engage in sexual activities that are done in private. Instead, the Justices have acknowledged the existence of a "right" and defined it by very specific application

to laws relating to reproduction, contraception, abortion, and marriage.

Ronald D. Rotunda & John E. Nowak, 3 *Treatise on Constitutional Law: Substance and Procedure* § 18.26 (3d ed.) (1999); *see also, e.g., Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (recognizing a "right of privacy" in marriage stemming from the "zone of privacy created by several fundamental constitutional guarantees"); *Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (holding that right of privacy in matters concerning procreation and family "is broad enough to encompass a woman's decision whether or not to terminate her pregnancy"); *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (invalidating ordinance that barred certain family living arrangements); *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (holding that a statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct violates the "right of privacy" guaranteed by the Due Process Clause of the Fourteenth Amendment).

By raising this constitutional argument, the Sheriff's Department urges this Court to add another category of protection to the privacy rights the Supreme Court has found under the Fourteenth Amendment: the right of an individual's performance of his public duties to be free from public scrutiny. We find this would be ill-advised. Unless and until the Supreme Court rules otherwise, we will follow its precedent and not expand the "right of privacy" under the Fourteenth Amendment beyond those situations which the Court has ruled bear on the most intimate decisions affecting personal autonomy—namely reproductive rights, familial and marital relations.

## II. VALIDITY OF INJUNCTIVE RELIEF

■ The Sheriff's Department maintains the trial court abused its discretion in issuing an injunction. We disagree.

In order that its mandate of disclosure be enforced, there is a statutory presumption that no adequate remedy at law exists for a violation of FOIA and that injured parties are entitled to appropriate equitable relief:

Any citizen of the State may apply to the circuit court for either or both a declaratory judgment and injunctive relief to enforce the provisions of this chapter in appropriate cases.... The court may order equitable relief as it considers appropriate, and a violation of this chapter must be considered to be an irreparable injury for which no adequate remedy at law exists.

S.C.Code Ann. § 30–4–100(a) (1991); *see also Business License Opposition Comm. v. Sumter County,* 311 S.C. 24, 426 S.E.2d 745 (1992) (upholding trial court's grant of injunction prohibiting a public body from holding future secret meetings in violation of FOIA); *Florence Morning News, Inc. v. Building Comm'n of City and County of Florence,* 265 S.C. 389, 218 S.E.2d 881 (1975) (upholding trial court's injunction prohibiting defendants from interfering with the plaintiff's right to inspect and copy original records in possession of a public body).

The Sheriff's Department clearly violated the provisions of FOIA by withholding non-exempt documents that were the subject of a legitimate request and failing to segregate exempt and non-exempt materials for disclosure. The award of equitable injunctive relief was therefore entirely appropriate.

The Sheriff's Department alleges the injunction granted by the trial court was overly broad. We disagree.

The injunction issued in the trial court's order provided that "defendants are permanently enjoined and restrained from asserting exemptions from mandatory disclosure that have no legal or factual justification, and from continuing to refuse to segregate exempt and non-exempt material and make non-exempt public records available for inspection and copying." The Sheriff's Department avers this injunction "did not set forth specific reasons for its issuance or describe in reasonable detail the acts to be restrained." The Department argues "the permanent injunction prevents the defendants from asserting statutory and constitutional exemptions under [FOIA]" and "extends beyond the records requested in this case to all information and records in possession of the defendants in perpetuity."

Reading the trial court's order as a whole, the reasons for the injunction and the acts it intends to proscribe are amply

clear. The trial court, in its findings of fact and conclusions of law, discussed at length the FOIA violation and the records ultimately subject to disclosure. We do not read the trial court's order as compelling the production of records which are exempt under FOIA. To the extent that any of the Sheriff's Department's records are exempt under section 30–4-40 of FOIA, the Department is not obligated to disclose them. We find no error with the issuance of the injunction or its scope.

## III. HEARSAY OBJECTION

■ The Sheriff's Department contends the trial court erred in allowing certain testimony of Terry Plumb, claiming it was inadmissible hearsay. We disagree.

Terry Plumb, editor of *The Herald* during the relevant time period, testified about the events leading up to the FOIA request and the present action. Part of Plumb's testimony concerned a conversation he had with Burton regarding the story he was developing relating to the allegations made against the Sheriff's Department. Plumb stated:

Well, I asked Ray [Burton] what this was all about, and he told me that a woman by the name of Lori Williams had been arrested on public disorderly conduct. This woman further related she had been a complainant against a deputy and that she had had an affair with him, and they had a falling out. She told Ray that [the deputy] had threatened to distribute photographs of her in the nude and that she had reported this to the Sheriff's Department. They had seized his car, found photographs in question of this woman, and that there had been an investigation by the Sheriff's department and that he and several other deputies had been suspended, and that the shift—[t]he 300 shift, I believe, it was called, had been reorganized because of the scandal that emanated from this particular incident.

The Sheriff's Department raised a contemporaneous objection that this testimony was inadmissible hearsay. The trial court overruled the objection and allowed the testimony.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule

801(c), SCRE. "Proof of a statement introduced to show a party heard and acted upon information is not objectionable hearsay." *Fields v. Regional Med. Ctr. Orangeburg*, 354 S.C. 445, 454, 581 S.E.2d 489, 493 (Ct.App.2003); *see also Webb v. Elrod*, 308 S.C. 445, 449, 418 S.E.2d 559, 562 (Ct.App.1992) ("Proof of a statement introduced for the purpose of showing a party relied and acted upon it is not objectionable on the ground of hearsay.").

Plumb's statement is a clear example of showing an action based upon information and is not offered for the truth of the matter asserted. Reviewing Plumb's statement in the context of his testimony as a whole, it is apparent the statement was not offered to prove that Williams had an affair with a deputy, that Williams had filed a complaint, that an investigation had been conducted, or that deputies had been suspended. The testimony was merely offered to show why the newspaper was requesting access to the Sheriff's Department's records.

Because the statement was not hearsay, the trial court did not err in allowing its admission as evidence.

## IV. ATTORNEY'S FEES

By way of cross-appeal, Burton appeals the trial court's denial of its request for attorney's fees as the prevailing party. Burton maintains the trial court abused its discretion by failing to enter its findings regarding its denial of the fee request. We agree.

Under FOIA, [i]f a person or entity seeking such relief prevails, he or it may be awarded reasonable attorney fees and other costs of litigation. S.C.Code Ann. 30–4–100(b) (1991). As a general rule, the amount of attorneys fees to be awarded in a particular case is within the discretion of the trial judge. *Baron Data Systems, Inc. v. Loter*, 297 S.C. 382, 377 S.E.2d 296 (1989); *see also Litchfield Plantation Co. v. Georgetown County Water Sewer Dist.*, 314 S.C. 30, 443 S.E.2d 574 (1994) (finding that, as 30–4–100(b) provides attorneys fees *may* be awarded, judge has discretion to award fees); *Campbell v. Marion County Hosp. Dist.*, 354 S.C. 274, 580 S.E.2d 163 (Ct.App.2003) (where one party prevails in his claim for information under FOIA, Circuit Court has discretion to award attorneys fees). The award, however, must be

reasonable and supported by adequate findings. *Baron Data Systems,* 297 S.C. at 384, 377 S.E.2d at 297.

There are six factors for the trial court to consider when determining an award of attorneys fees: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Jackson v. Speed,* 326 S.C. 289, 486 S.E.2d 750 (1997). Upon request for attorneys fees that are authorized by contract or statute, the trial court should make specific findings of fact on the record for each of these factors. *See Jackson,* 326 S.C. at 308, 486 S.E.2d at 760 ( [O]n appeal, an award for attorneys fees will be affirmed so long as sufficient evidence in the record supports each factor.); *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 494, 427 S.E.2d 659, 661 (1993) (When an award of attorneys fees is requested and authorized by contract or statute, the court should make specific findings of fact on the record for each factor.).

In *Society of Prof'l Journalists v. Sexton,* 283 S.C. 563, 324 S.E.2d 313 (1984), a FOIA case, the appellant urged the Court to reverse the attorney's fee award on grounds that DHEC acted in good faith reliance on its regulation. The Supreme Court declined to do so, holding the "trial judge did not abuse his discretion in awarding fees to encourage agencies to comply with FOIA requests." *Id.* at 568, 324 S.E.2d at 316.

In its order, the trial court addresses the request for attorney's fees in a wholly conclusory fashion: "The award is discretionary with the Court, and the Court declines to award fees in this case." The court did not consider or enter findings for the factors outlined in *Jackson v. Speed* as mandated by our Supreme Court. We must, therefore, remand this matter to the trial court for a full and proper consideration of the attorney's fees request.

## CONCLUSION

Based on the foregoing, the trial court's order is **AFFIRMED IN PART, REVERSED IN PART, and REMANDED** for further disposition.

HEARN, C.J., and BEATTY, J., concur.